## Case No. 5,780.
### GREENLEAF v. MAHER et al.
[2 Wash. C. C. 393.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1809.

INJUNCTION — STAY PROCEEDINGS AT LAW—JUDGMENT.

A perpetual injunction was granted, in order to stay proceedings on a judgment at law, obtained in a suit instituted in the name of a person not interested, whose name was used only for the purpose of preventing a defence, which the defendant had against the real plaintiff in interest.

This cause now came on to be heard, upon the bill, answers of all the defendants [Maher, Smith and Pendleton], replication, and the deposition of a Mr. Jackson, an agent of Maher; who deposed, that in 1808, he (having been authorized by Maher to take land), received a conveyance from one Justice Smith, in part payment of Smith's acceptance of the bill held by Maher, at the price of about twenty-four hundred dollars, at which it was valued by three disinterested persons, for which sum he had passed his receipt to Mr. Smith. The judgment at law, by Smith

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

against Greenleaf, was rendered in November, 1806; afterwards this injunction was granted, subject to the decision of the court in this cause, whether the said Smith was entitled to recover in that action.

Tilghman and Ingersoll, for the complainant, contended, that until actual payment, or real satisfaction made by Smith to Maher, no action could be maintained by Smith against Greenleaf. Even if Smith had given his bond to Maher, and he had accepted it as payment, it would not have been sufficient. 3 East, 169; 2 Term R. 371, 372; 3 Bl. Comm. 163, note 5. As to the note given by Greenleaf to Smith, in New-Jersey, it was given under such circumstances of oppression, that it cannot be supported. Greenleaf was, at that time, sued by Maher in this court. The suit in New-Jersey was for the amount of Maher's bill, and the one assigned to ——; although it is not pretended that any part of this last bill had been satisfied or secured, and bail was marked for thirty-five thousand dollars. The payment in 1808 was objected to as unsatisfactory, in respect to the bona fide nature of it.

Dallas and Rawle, for the defendants, argued that it was of no consequence to the complainant how Maher was satisfied. A note given and received as payment by a surety, is sufficient to entitle him to recover. If his body be taken in execution, it is a payment. There is no distinction between this case and one where a bond of indemnity is given. In this case, the complainant promised to provide funds to enable Smith to pay, and a principal may be bound to indemnify, without giving a bond. The surety may sue in equity, to compel his principal to indemnify: also to compel the creditor to bring his suit against the principal. Cases cited, 1 Vent. 261; 5 Coke, 24; 3 Mod. 87; 2 Esp. 571; 1 Vern. 189; 18 Vin. Abr. 141; Anstr. 544; 3 Wils. 13, 266, 346; 1 Term R. 559, 715; 4 Burrows, 2482; 2 Com. Dig. 327.

WASHINGTON, Circuit Justice, delivered the opinion of the court. If we had any doubt in this case, we should take time to consider it; but we have none. We cannot but perceive that the suit at law was brought by Maher, in the name of Smith. The deeds of trust, the acknowledgment of the defendants in their answers, the arrangement in New-Jersey upon the arrest of the complainant, and every circumstance in the cause, prove this beyond all controversy. The case, then, is no more than this. Maher, the payee of this bill, whose claim against the complainant, as drawer, was forever barred by the certificate of the complainant, by an arrangement with Smith, acknowledging himself satisfied in respect to him, receives an assignment from Smith to certain trustees of his, Smith's claim upon the complainant, and now uses Smith's name to recover the money. But had Smith any

cause of action against the complainant, which he could assign? Merely as acceptor or surety, he had none. But if he had paid Maher, after the certificate of bankruptcy of Greenleaf, a cause of action would then, and not before, have accrued; and this, being subsequent to the certificate, would not have been barred by it. This seems to be so obvious, that it can only be necessary to notice the objections to it.

It is said that Smith has given satisfactory security to Maher, which is equivalent to a payment. What is this security? As to his claims upon Poulteney & Hornsby, and upon the French government, it does not appear, nor is it pretended, that they have produced, or are likely to produce, one shilling; and if they never should, Smith can be in no worse condition than if he had not given the deed. If the first deed was equivalent to satisfaction and payment, then this took place before the certificate, which would be fatal to the claim. The other security is this very debt, in which, as before observed, Smith had no interest, until he had first paid Maher. If Maher had gratuitously released Smith, could the latter have recovered against Greenleaf, as for money paid to his use? Certainly not. It is said, that Greenleaf is bound to indemnify Smith. This is not the fact; but if it were, the action of Smith must have been for a breach of that contract, and not for money paid for his use, which was never paid. It is said, that Greenleaf, being complainant in equity, must do equity; and this equity consists in paying or indemnifying Smith. But this is begging the whole cause. It is the very thing which Greenleaf says, and very justly too, he is not bound to do; and it is to be relieved against such a claim, that he comes into this court. As to the payment, said by Jackson, the witness, to have been made in 1808, it was after this cause was for hearing, and it comes in too questionable a shape to be accredited now. It is obvious, that the whole object is to vest in Maher a right to recover against Greenleaf, where alone he has a chance to get any thing. He would therefore care very little about giving a receipt for ten times the amount of the property transferred; and it is to be observed, that this alleged payment is about nine months before the answer of Maher is sworn to, and yet he does not notice it. Besides, although we have the testimony of the witness, we have not that of the defendants, in order to ascertain the reality of this payment. If, however, this payment has been bona fide made, and is a real transaction, and still further, if the trust property should turn out productive, or Smith should be enabled to pay Maher, it would be inequitable to bar the right of Smith to proceed at law upon his judgment, by an absolute decree; and therefore we shall decree a perpetual injunction as to the judgment at law, and as to a transfer of the note given in New-Jersey, under circumstances which require us to prevent it from operating against the persons who gave it. But this decree will be without prejudice to the defendant Smith, in case he should hereafter make payment or other equitable satisfaction to Maher; or in case he should be able to establish the payment made in 1808, to the satisfaction of the court; and leave will be reserved to him, at any future time, to open this decree for these purposes. We shall not decree the New-Jersey note to be delivered to the plaintiffs, or to be cancelled, but to be delivered to the clerk of this court; and reserve for future consideration, in case this decree should be opened, whether Smith should be entitled to the benefit of that security. The costs of this, and the suit at law, to be paid by Smith and Maher.

[See Case No. 5,779.]